UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONNA D. MCMAHAN,<br><br>          Plaintiff,<br>     v.<br><br>CAROLYN COLVIN, Acting Commissioner, Social Security Administration,<br><br>          Defendant. | Case No. 5:13-cv-02494-PSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket Nos. 18, 20)** |

Donna D. McMahan appeals the decision by Carolyn Colvin, Acting Commissioner of Social Security, denying her supplemental security income disability benefits.[1] McMahan moves for summary judgment. The Commissioner opposes the motion and cross-moves for summary judgment. The matter was submitted without oral argument pursuant to Civ. L.R. 16-5. Having reviewed the papers and considered the arguments of counsel, the court DENIES McMahan's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

---

[1] The challenged decision was rendered by Administrative Law Judge Phillip C. Lyman (the "ALJ") on January 26, 2012. The ALJ's decision became final on April 5, 2013, when the Appeals Council of the Social Security Administration denied McMahan's request for administrative review of the decision.

1
Case No. 5:13-cv-02494-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. BACKGROUND

The following facts are taken from the decision by the ALJ and the accompanying administrative record ("AR"). McMahan was born January 24, 1963.[2] She has a high school education[3] and has completed at least two years of college.[4] In the past, McMahan has worked as a night audit clerk, self-serve gas station cashier, coffee shop cashier, housekeeper, and glass shop cashier.[5] Because of her medical conditions, she has not worked since January 1, 2000.[6] McMahan filed a prior application for supplemental security income payments on May 16, 2006.[7] The claim was denied initially, on reconsideration, and in a hearing decision of November 13, 2008.[8]

McMahan applied for supplemental security income benefits again on February 18, 2010,[9] claiming that multiple conditions limit her ability to work, including arthritis, bone spurs, Colitis, GERD, back problems, IBS, PTSD,[10] and migraines.[11] The claim was denied initially on August 13, 2010, and again upon reconsideration on December 10, 2010.[12]

---

[2] *See* AR at 44.

[3] *See* AR at 44.

[4] *See* AR at 189.

[5] *See* AR at 44, 202.

[6] *See* AR at 189.

[7] *See* AR at 36.

[8] *See* AR at 36.

[9] *See* AR at 36.

[10] *See* AR at 188.

[11] *See* AR at 92.

[12] *See* AR at 36.

**A.      The ALJ Held a Hearing on McMahan's Present Claim**

The ALJ held a hearing on January 20, 2012.[13] McMahan appeared at the hearing with her counsel.[14] Also appearing and testifying were Steven B. Gerber, M.D., an impartial medical expert, and Ronald W. Morrell, an impartial vocational expert.[15] Three of McMahan's treating physicians submitted Residual Functional Capacity ("RFC") reports, but none testified.

At the hearing, McMahan testified about her disabilities that prevent her from working.[16] She has migraines daily, lasting from just a few minutes to several days, and she can have as many as 30 migraines in one day.[17] As a result of her migraines, she has to lie down four to five times per day.[18] When McMahan gets a typical migraine, her head pounds primarily on the left side, she gets itching and ringing in her ears, she gets hot or cold, her vision becomes poor, she has increased sensitivity to light and sound, she gets nauseous, she gets vertigo, and she often becomes confused.[19]

McMahan further testified that she has ulcerative colitis, an inflammatory condition of the large intestine, and constant diarrhea.[20] She also has back pain, neck pain, and arthritis and carpal tunnel in her wrist.[21] She is seeing a social worker for anxiety and PTSD.[22] She has been seeing

---

[13] *See* AR at 36.

[14] *See id.*

[15] *See id.*

[16] *See* AR at 92-111.

[17] *See* AR at 93-94, 105.

[18] *See* AR at 105.

[19] *See* AR at 92, 94, 108-9.

[20] *See* AR at 96-98, 107.

[21] *See* AR at 99.

[22] *See* AR at 101-103.

1  Dr. Halpern for 12-18 years for her back, headaches, and stomach problems.[23]  She has been seeing
2  Dr. Maisterra at least once a month since 2008 for all issues except neck and back pain.[24]  She has
3  seen Dr. Niven for stomach problems since about 2005.[25]

4  Gerber testified that despite her ailments, McMahan's medical record indicated the
5  functional ability to perform, at a minimum, the full range of light work, and possibly even
6  medium-level work.[26]  Because McMahan's record indicates that her migraines may be caused by a
7  carotid dissection, the ALJ asked Gerber for an explanation of the condition and its
8  consequences.[27]  Gerber explained that a carotid dissection is a separation of the lining of the
9  carotid artery and can range in severity from an incidental finding to the cause for a stroke.[28]
10 Because there was no evidence from the neurological examination or MRI of neurological
11 compromise or any other severe consequences, Gerber opined that it was appropriate for
12 McMahan's doctors to treat her only with blood pressure medication and to recommend she quit
13 smoking.[29]  When asked if there were any medical tests for headaches, Gerber noted that an
14 evaluation of headaches always includes an MRI, which was done in this case but came back
15 normal.[30]

---

[23] *See* AR at 106.

[24] *See* AR at 106-7.

[25] *See* AR at 107.

[26] *See* AR at 84.

[27] *See* AR at 85-87, 356-93.

[28] *See* AR at 85.

[29] *See* AR at 86.

[30] *See* AR at 91.

Morrell provided explanatory and clarifying testimony of his written opinions about the capacity of a hypothetical person in McMahan's position to do unskilled, light work and the existence of transferable skills.[31]  The ALJ took the case under submission.

### B. The ALJ Concluded That McMahan Had the RFC to Perform Past Relevant Work and Thus Was Not Disabled

On January 26, 2012, the ALJ issued his decision.  Pursuant to 20 C.F.R. § 416.920(a), the ALJ conducted the established five-step evaluation process for determining whether an individual is disabled.  In the first step of the analysis, the ALJ found McMahan had not been engaged in substantial gainful employment since February 18, 2010.[32]  At steps two and three, he found that McMahan has the severe impairments of irritable bowel syndrome, colitis, chronic back pain, migraines, and depression, but that these did not meet or medically equal any of the official impairments listed in 20 C.F.R. § 404app. 1.[33]  At step four, he found that McMahan had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that she may never climb ladders and scaffolds, and is precluded by her medical conditions from understanding, remember[ing], and carrying out detailed instructions or interacting with the general public for more than 10% of a normal workday.[34]  At step five, based on the claimant's age, education, past work, RFC, and vocational expert testimony, the ALJ found that McMahan could perform her past relevant work as a night audit clerk and self-serve gas station cashier as well as a wide range of other light unskilled work.[35]  Accordingly, the ALJ concluded that McMahan was not disabled and thus did not qualify for supplemental security income.[36]

---

[31] *See* AR at 113-118.

[32] See AR at 39.

[33] *See id.*

[34] *See* AR at 40.

[35] *See* AR at 44-45.

[36] See AR at 45-46.

5
Case No. 5:13-cv-02494-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## II. LEGAL STANDARDS

### A. Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision denying McMahan's benefits. The Commissioner's decision (here the underlying decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.[37] In this context, the term "substantial evidence" means "more than a scintilla but less than a preponderance – it is such relevant evidence a reasonable mind might accept as adequate to support the conclusion."[38] When determining whether substantial evidence exists to support the administrative record as a whole, the court must consider adverse as well as supporting evidence.[39] Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the ALJ.[40] "If additional proceedings can remedy defects in the original administrative proceedings, a the case should be remanded."[41]

### B. Standard for Determining Disability

Disability claims are evaluated using a five-step, sequential evaluation process. In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.[42] If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments that significantly limits the claimant's ability to do basic work activities; if not, a finding of "not

---

[37] *See Moncada v. Chater,* 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir. 1992).

[38] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1257.

[39] *See Drouin,* 966 F.2d at 1257; *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989).

[40] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1258.

[41] *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

[42] *See id.*

disabled" is made and the claim is denied.[43]  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments;[44] if so, disability is conclusively presumed and benefits are awarded.[45]  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity"[46] to perform his or her past work; if so, the claimant is not disabled and the claim is denied.[47]  The claimant has the burden of proving that he or she is unable to perform past relevant work.[48]  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant can perform other substantial gainful work;[49] the determination of this issue comprises the fifth and final step in the sequential analysis.

### III.   DISCUSSION

McMahan argues the ALJ erred in his ultimate finding that she was not "disabled" as defined by the Social Security Act, 42 U.S.C. § 401 *et seq.*, in that he did not have a legitimate basis for rejecting the opinions of McMahan's three treating physicians regarding the impact of her medical conditions on her ability to work on a sustained basis.[50]  Although these physicians did not

---

[43] *See id.*

[44] *See* 20 C.F.R. § 404app. 1.

[45] *See id.*

[46] A claimant's RFC is what he or she can still do despite existing exertional and nonexertional limitations. *See Cooper v. Sullivan,* 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[47] *See Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

[48] *See id.*

[49] There are two ways for the Commissioner to meet the burden of showing that there is work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. *See Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999).

[50] *See* Docket No. 18, at 14.

testify at the hearing, each submitted a written RFC assessment for the ALJ's consideration. The ALJ either rejected or ignored each one.

In evaluating physicians' opinions, the case law and regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither treat nor examine the claimant (non-examining physicians).[51] As a general rule, more weight should be given to the opinion of a treating source than to the opinions of physicians who do not treat the claimant.[52] An ALJ may reject a treating physician's contradicted opinion only with "specific and legitimate" reasons, supported by substantial evidence in the record.[53] "Further, an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective findings."[54] For example, the ALJ may permissibly reject "check-off reports that [do] not contain any explanation of the bases of their conclusions."[55]

### A.  Dr. Maisterra

Maisterra has been McMahan's primary care physician since 2008.[56] However, the ALJ rejected her opinion regarding McMahan's physical capability because it was not well-supported by the medical record, and it was contradicted by the testimony of Gerber, the consultative medical expert, as well as the physicians reviewing the case from the state agency.[57]

---

[51] *See Johnson v. Colvin*, EDCV Case No. 12-cv-912-FFM, 2013 WL 942243, at *2 (C.D. Cal. Mar. 11, 2013) (citing *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995), *limited on other grounds, Saelee v. Chater,* 94 F.3d 520, 523 (9th Cir.1996)); *see also* 20 C.F.R. §§ 404.1502, 404.1527(c).

[52] *Id.*; *see also* 20 C.F.R. § 404.1527(c)(2).

[53] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) ("Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record").

[54] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

[55] *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012).

[56] *See* AR at 541.

[57] *See* AR at 84, 545.

These reasons for limiting the weight given to Maisterra's opinions are specific and legitimate and supported by substantial evidence in the record.[58] First, although a contradictory opinion from Gerber is insufficient by itself to reject Maisterra's opinion, the treatment records did not fully document the severity alleged.[59] In particular, the CT scan and MRI showed normal results, contradicting Maisterra's suggestion that carotid dissection could be the cause of McMahan's headaches. Second, Maisterra's opinion (given by way of questionnaire) did not contain an explanation of the bases of her conclusions.[60] This questionnaire amounts to little more than the check-off reports that the Ninth Circuit has confirmed may be rejected.[61] Even if the undersigned might have reached a different conclusion, the record justifies the ALJ's conclusion that Maisterra's opinion should be rejected.

**B.     Dr. Halpern**

Halpern has treated McMahan since 1999 and submitted a RFC report, in the form of a questionnaire, based upon this treatment relationship.[62] The ALJ rejected this opinion as well because it was contradicted by the testimony of Gerber and the physicians reviewing the case from the state agency.[63] As with Maisterra, the ALJ found that the severity alleged in Halpern's opinion was not supported by the treatment notes.[64] Furthermore, the records only show two to three office visits between 2007 and 2011.[65] The regulations provide that the longer a treating source has treated the patient and the more times the patient has been seen by the treating source, the more

---

[58] *See Johnson*, 2013 WL 942243, at *2.

[59] *See* AR at 43.

[60] *Molina*, 674 F.3d at 1111-12.

[61] *See id.*

[62] *See* AR at 535.

[63] *See* AR at 84, 539.

[64] *See* AR at 44.

[65] *See* AR at 44, 448-52, 569-70.

9
Case No. 5:13-cv-02494-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

weight the ALJ is obliged to give to the source's medical opinion.[66] The opposite is equally true. Finally, as with Maisterra, Halpern's opinion did not contain an explanation of the bases of his conclusions.[67] These explanations for limiting the weight given to Halpern's opinions are specific and legitimate and supported by substantial evidence in the record.[68]

### C.     Dr. Niven

McMahan finally argues that the ALJ did not even reference the treating opinion of Niven regarding the impact of McMahan's ulcerative colitis on her ability to work, and for that reason alone, its decision should be reversed.[69] As discussed above, an ALJ may reject a treating physician's opinion only with "specific and legitimate" reasons, supported by substantial evidence in the record.[70] The court agrees that not discussing a doctor's opinion is tantamount to failing to set forth the requisite reasons for rejecting that opinion. Thus, the ALJ committed a legal error in not discussing Niven's opinion.

However, Commissioner argues that this error was harmless because Niven's opinion was just as unsupported as the other two opinions, which were specifically rejected for that reason.[71] Even if the ALJ had discussed Niven's answers to Plaintiff's questionnaire, she argues "there is no evidence in the record to support the degree of limitation that Niven assessed".[72]

---

[66] *See* 20 C.F.R. § 404.1527(c)(2)(i).

[67] *See Molina*, 674 F.3d 1104, at 1111-12.

[68] *See Johnson*, 2013 WL 942243, at *2.

[69] *See* Docket No. 18, at 12.

[70] *See Lester*, 81 F.3d at 830 ("Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record").

[71] *See* Docket No. 20, at 16.

[72] *Id.*

10
Case No. 5:13-cv-02494-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   The Ninth Circuit has recognized that harmless error principles apply in the Social Security Act context.[73] It has also deemed legal errors harmless where it was clear they did not alter the ALJ's decision.[74] "If an ALJ has provided well-supported grounds for rejecting testimony regarding specified limitations, we cannot ignore the ALJ's reasoning and reverse the agency merely because the ALJ did not expressly discredit each witness who described the same limitations."[75] The record in this case does not contain Niven's treatment records for McMahan. Because there are no medical records to support Niven's opinion, the ALJ could permissibly discredit it as conclusory, brief and unsupported by the record as a whole – as it did both Maisterra and Halpern's opinion.[76] In sum, the ALJ's error in not discussing Niven's opinion was harmless and therefore insufficient grounds for reversal.

## IV. CONCLUSION

McMahan's motion for summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is GRANTED. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: February 10, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[73] *See Molina*, 674 F.3d at 1115 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).

[74] *Id.*

[75] *Id*. at 1121; Dr. Niven opined that McMahan would often need unscheduled breaks and would be absent from work more than 4 days per month (AR 548-549). Dr. Halpern and Dr. Maisterra opined these same limitations (AR 538-539 and AR 544-545, respectively).

[76] *See Batson*, 359 F.3d at 1195.

11
Case No. 5:13-cv-02494-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT